UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
NOV 20
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

SUSAN L. GIORDANO,

  Plaintiff,

v.                  Civil Action No. 4:08cv56

PETSMART, INC.,

  Defendant.

## OPINION AND ORDER

This matter comes before the court on a motion for summary judgment filed by the defendant, Petsmart, Inc. ("Petsmart"), pursuant to Rule 56 of the Federal Rules of Civil Procedure  The court has reviewed the parties' supporting memoranda and finds that a hearing is unnecessary for the resolution of the issues presented. For the reasons set out herein, the court **GRANTS** the defendant's motion for summary judgment.

### Factual Background

Susan Giordano filed suit in the Circuit Court for the City of Newport News on April 23, 2008, seeking $1,000,000 in damages for injuries she sustained when she slipped and fell upon a liquid substance on the floor of a Petsmart store in Newport News, Virginia. Mrs. Giordano's complaint alleges a claim under Virginia law for negligence against Petsmart for failing to maintain its premises in a reasonably safe condition. On May 16, 2008, Petsmart removed the case to this court pursuant to 28 U.S.C. § 1441(a), alleging diversity jurisdiction as the grounds for removal.[1]

---

[1] Mrs. Giordano is a Virginia resident, and Petsmart is a corporation that is incorporated in Delaware and has its principal place of business in Phoenix, Arizona.

Mrs. Giordano and her husband own three cats, and visit the Banfield veterinarian clinic three or four times a year for their cats' checkups. The Banfield clinic is located inside the Petsmart store at 12142 Jefferson Avenue, Newport News, Virginia, and the only way to enter the clinic is through the store. The Banfield clinic has a small waiting area that is located to the far right, beyond Petsmart's checkout registers and merchandise, and there is a check-in counter at the entrance to the Banfield clinic that faces the waiting area. The Petsmart store has five registers at the front of the store, and Register 5 is the closest check-out register to the Banfield waiting area. One must walk past Register 5 to get between the Banfield clinic and the merchandise in the Petsmart store.

On Thursday, May 25, 2006, the Giordanos had an 11 a.m. appointment for one of their cats at the Banfield clinic, and they arrived at Petsmart at approximately 10:36 a.m. The Giordanos checked in at the Banfield clinic, and Mr. Giordano sat in the Banfield waiting area with the cat while Mrs. Giordano went shopping in the Petsmart store. When Mrs. Giordano left the Banfield clinic, she did not notice any liquid on the floor, nor any animals in the area around Register 5. From where Mr. Giordano was sitting, he could see the location where Mrs. Giordano eventually fell, and Mr. Giordano did not notice any animals in that area, or any liquid on the floor. After purchasing a few cat collars and tags, Mrs. Giordano walked back towards the Banfield clinic. As Mrs. Giordano walked past Register 5, she was looking at the merchandise displayed, and looking for her husband, and she was not looking at the floor. Mrs. Giordano did not notice a liquid substance that had pooled on the floor near Register 5, and she slipped in the liquid and fell onto her knee. Joseph Torres, the pets product manager at the time, was walking behind Mrs. Giordano when he noticed she fell. Torres was the only other person who saw Mrs.

2

Giordano fall. Both the attendant at the Banfield counter and the employee at Register 5 were absent during this time, and Mr. Giordano was no longer in the waiting room because he was with the veterinarian. Torres also did not notice the liquid on the floor until after Mrs. Giordano fell. Both Torres and Mrs. Giordano thought the liquid might have been animal urine based upon its smell and color. However, neither the Giordanos, nor Torres, noticed any pets in the area prior to Mrs. Giordano's fall, no one saw anyone spill any liquid on the floor. Torres helped Mrs. Giordano up to a nearby bench, and he noticed that Mrs. Giordano was limping and had difficulty walking on the knee upon which she fell. Torres offered to call Mrs. Giordano an ambulance, but she refused. Mrs. Giordano then filled out an accident form, and rejoined her husband who was with the veterinarian at the clinic. According to the accident form, Mrs. Giordano's fall occurred at approximately 11:35 a.m. After this incident, neither Torres, nor any other Petsmart employee, heard from the Giordanos again regarding Mrs. Giordano's fall until this suit was filed; however, the Giordanos continued to shop at that Petsmart and to bring their cats to the Banfield clinic.

Petsmart's policies allow pet owners to bring vaccinated and leashed pets into the store, and there is a sign at the entrance of the store that states "Leashed and vaccinated pets welcome." Besides the Banfield clinic in the store, Petsmart also offers grooming and training services for customer's pets, and adoption services for customers looking for a new pet. According to George Davis, the store manager of the Petsmart store located in Newport News, more than half of the customers bring their pets into the store, and pet accidents are a daily occurrence. Approximately seventy-five percent of pet owners will clean up their pet's accident in the store. Petsmart also has cleanup and safety policies regarding these potential accidents by pets in the

store. Petsmart trains its employees to monitor the floor and to clean up pet accidents immediately. As part of their training, each employee must watch a video that details the cleanup procedures that must be followed, and these safety and cleanup procedures are reinforced at the daily employee meetings. If an employee notices that a pet had an accident in the store, that employee must either clean up the accident, ask a nearby employee to help clean up the accident, or call for help on the portable phone that each employee carries. If the employee calls for help, that employee must then remain by the accident to warn customers until a sign is brought over and the accident is cleaned up. After the accident is cleaned up, a wet floor sign is left in the area until that area is dry. Each Petsmart store also contains at least five "Oops Stations," that are stationed around and outside the store to allow customers and employees to easily clean up pet accidents. The Oops Station contains paper towels, a cleaning solution for the floor, two wet floor signs, and hand sanitizer. There was an Oops Station located approximately twenty to thirty feet from where Mrs. Giordano fell. Finally, Petsmart has the store professionally cleaned at least five days a week. Prior to the store's opening, a cleaning crew enters the store to scrub the floors, wipe the edges and corners, and then finish with a dust mop. After the cleaning crew finishes and before the store opens, the opening manager conducts a final walk-through the store to ensure that the floor is dry and clean, and everything is operational. Torres was the opening manager on the day of Mrs. Giordano's fall, and his shift began at 3:00 a.m. when he let the cleaning crew in, and his shift ended at 1 p.m. Torres conducted the final walk-through and safety check that morning. Torres did not find any urine or other wet spots on the floor that morning.

## Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). The court must assess the evidence and draw all permissible inferences in the non-movant's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Nevertheless, the non-movant must make a sufficient evidentiary showing on each element of their claims such that a jury could reasonably find in their favor. Celotex, 477 U.S. at 322. While it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-moving party's burden to establish its existence. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986).

The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in [their] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The evidence that the non-moving party presents to this end must be more than a "mere scintilla." Barwick v. Celotex Corp., 736 F.2d 946, 958-959 (4th Cir. 1984). In order for the non-moving party to survive summary judgment, they must present evidence that is "significantly probative." Celotex Corp., 477 U.S. at 327. If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary

judgment must be granted. Anderson, 477 U.S. at 249-250. District courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323-25).

Summary judgment does not require that no factual issues be in dispute. To find against the moving party, the court must find both that the facts in dispute are material and that the disputed issues are genuine. Only "facts that might affect the outcome of the suit under governing law" are material. Anderson, 477 U.S. at 248. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### Analysis

A court exercising diversity jurisdiction applies the substantive law of the forum state, which in this case is Virginia law. See Erie R.R. v. Thompkins, 304 U.S. 64, 78-79 (1938). A claim of negligence in Virginia requires "proof that the defendant breached some duty which it owed the plaintiff, and caused, by such breach, [the] injury." Colonial Stores Inc. v. Pulley, 203 Va. 535, 537 (Va. 1962). In slip-and-fall cases, the Supreme Court of Virginia has repeatedly stated that

> The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn

the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner].

Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 182 (1990) (quoting Pulley, 203 Va. at 537); see also Fobbs v. Webb Building Ltd. Partnership, 232 VA. 227, 229 (1986); Haliburton v. Food Lion, LLC, 2008 U.S. Dist. LEXIS 32898, *5-6 (E.D. Va. 2008). A prima facie showing of premise liability requires that the plaintiff prove an unsafe condition, and "'why and how the incident happened'; 'if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover.'" Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 451 (4th Cir. 2004) (quoting Town of West Point v. Evans, 224 Va. 625, 628 (1983)); see also Parker, 240 Va. at 184 (reversing judgment for the plaintiff who slipped and fell on a bean on the floor of the store because the evidence failed to show that the store placed the bean on the floor, that a worker missed the bean when mopping that section, or that the store had actual or constructive notice of the bean's presence and failed to remove it). If a plaintiff lacks evidence as to why an injury occurred, she may present evidence of the defendant's actual or constructive notice. Id.

Virginia slip-and-fall cases distinguish between negligence as a result of affirmative conduct on the part of the defendant, and negligence as a result of passive conduct on the part of the defendant. See Ashby v. Faison & Assocs. Inc., 247 Va. 166, 169-170 (1994); Haliburton, 2008 U.S. Dist. LEXIS 32898 at *7-8 n1. Affirmative conduct involves situations in which the defendant was the creator or "genesis" of the dangerous condition, and in these cases, notice is found where "'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or show have known, could have foreseen the risk of the danger resulting from such circumstances.'" Goehler v. Wal-Mart Stores, Inc., 2000 U.S. App. LEXIS 20932, * 5-7 (4th Cir.

2000) (citing and quoting <u>Memco Stores, Inc. v. Yeatman</u>, 232 Va. 50, 53-54 (Va. 1986)). Passive conduct involves situations in which the defendant fails to correct a dangerous situation, such as failing to clean up a spill, that was created by a third person or unknown party. See <u>Ashby</u>, 247 Va. at 605; <u>Haliburton</u>, 2008 U.S. Dist. LEXIS 32898, *8 n.1. The facts in this case are similar to the facts in <u>Ashby</u>, in which the plaintiff slipped on water that had collected on the floor of the lobby building on a rainy day because other individuals tracked the water into the building and were shaking their wet umbrellas onto the floor. <u>Ashby</u>, 247 Va. at 605. The Supreme Court of Virginia held that this was clearly passive conduct on behalf of the defendants, who owned the building because there was "no evidence that the defendants caused water to collect on the lobby floor." <u>Id.</u>

Mrs. Giordano argues that Petsmart's conduct should be considered affirmative conduct because their policy of allowing pet owners to bring their pets into the store created the dangerous condition, and that Petsmart should be prohibited from allowing animals into the store. The court, however, finds several flaws with this argument. First, Mrs. Giordano's argument is premised on the fact that the liquid is urine from a customer's pet; however, Mrs. Giordano is unable to prove that a customer's pet is the source of the liquid. While it is a logical assumption given the nature of the store and the description of the liquid, no one actually saw any animals in the vicinity of where the liquid was found, and Mrs. Giordano admitted that she does not know the source of the liquid. As the defendant notes, it possible and reasonable that a small child had an accident or wet his pants or caused the spill, or that the liquid is not even urine, and is some other foul-smelling, yellow substance. No one, including Mrs. Giordano, can explain what caused the liquid to appear on the floor or when it appeared, and therefore, Mrs. Giordano

cannot prove that the liquid is pet urine and that the defendant's policy caused her accident. Second, were the court to adopt Mrs. Giordano's affirmative conduct reasoning and apply it to other situations, such as the facts in <u>Ashby</u>, it would lead to absurd results, such as permitting individuals with wet umbrellas and shoes to walk on the floor of the lobby would be considered affirmative conduct on the part of the defendants in <u>Ashby</u>. Taking Mrs. Giordano's logic even further, it could mean that store owners that allow customers to bring drinks into their store may be creating a dangerous situation for other customers if those drinks are then spilled by the customer. Such conduct is not considered affirmative conduct under Virginia case law, and there must be some action on the part of Petsmart that caused the spill for their conduct to be considered affirmative conduct. Finally, this is not a situation in which an animal was in a store in which a customer would not expect to see an animal, such as a clothing store or grocery store. Petsmart, in many ways, is more than just a retail pet store because it has a veterinarian clinic, a grooming station, obedience classes, and adoption services for customers to adopt pets. Therefore, it is not unusual, or unexpected, for there to be animals in Petsmart, and it is necessary for the pets to come into the store to take advantage of the pet services offered. In fact, on the day of her accident, Mrs. Giordano brought her pet into the store to take it to the Banfield clinic, and she admitted to regularly shopping at Petsmart and seeing other customers with their pets in the store. Petsmart has safety and cleanup policies that are regularly reinforced with the employees, and Petsmart provides Oops Stations to facilitate the cleaning up of pet accidents. The court finds that Petsmart's policy of allowing pets into the store is not affirmative conduct, and Mrs. Giordano has not presented any evidence that Petsmart created or caused the dangerous situation. Petsmart's alleged failure to clean up the accident or warn Mrs. Giordano about the

accident is passive conduct under Virginia law. Therefore, Mrs. Giordano must prove that Petsmart had either actual or constructive knowledge of the liquid's presence on the floor.

Mrs. Giordano has not presented any evidence indicating that Petsmart had actual notice of the liquid on the floor. It is undisputed that no one, including the Giordanos, or Torres, the manager walking behind Mrs. Giordano, noticed there was liquid on the floor until after Mrs. Giordano fell. Torres states that he did a walk-through inspection of the store in the morning after the cleaning crew cleaned the store and did not notice any liquid on the floor. Additionally, no one, including the Giordanos and Torres, saw any animals near Register 5 where the liquid was later found. Since Mrs. Giordano has not presented any evidence of actual notice of the liquid on the part of Petsmart, she must prove Petsmart's negligence through constructive notice.

The theory of constructive notice means that knowledge of the dangerous condition may be imputed upon the owner if the condition poses a foreseeable risk of danger. Goehler, 2000 U.S. App. LEXIS 20932, at * 5-7. To prove constructive notice, a plaintiff may present "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective conditions." Grim v. Rahe, Inc., 246 Va. 239, 242 (1993). Thus, the plaintiff must show when the dangerous or unsafe condition occurred to establish a prima facie case. Id. Mrs. Giordano, however, cannot establish when the spill occurred, as she was not aware of the substance before she fell, and cannot say how long the liquid had been there. In addition, neither her husband, Torres, nor any other individual in the store noticed any liquid on the floor, or any pet in that area near Register 5 prior to Mrs. Giordano's fall. As the Virginia Supreme Court's reasoning in Parker applies to this case:

> There is no evidence in this case that [Winn-Dixie] knew of the presence of the

> [bean] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed on the floor an instant before [Parker] as it is to infer that it had been there long enough that [Winn-Dixie] should, in the exercise of reasonable care, have known about it.

Parker, 240 Va. at 184 (quoting Pulley, 203 Va. at 537-38); see also Haliburton, 2008 U.S. Dist. LEXIS 32898, *9-10 (granting summary judgment in favor of the defendant because the plaintiff could not provide evidence as to when the unsafe condition was created, and therefore, she could not establish that a sufficient amount of time had passed to provide the defendant with constructive notice of the condition); Ashby, 247 Va. at 170 (finding that there was no evidence that anyone, including the plaintiff, knew of the dangerous condition before the plaintiff fell, and thus, the plaintiff failed to establish that the defendants knew of the existence of the hazardous condition before the plaintiff fell or that the hazardous condition had existed long enough for the defendants to have known of it in time to remove the condition or warn the plaintiff of its existence). Mrs. Giordano has failed to provide any evidence as to how long the liquid had been on the floor, and therefore, she cannot establish that a sufficient period of time had passed for Petsmart to have constructive notice of the unsafe condition.

## Conclusion

For the reasons stated above, the court **GRANTS** the defendant's motion for summary judgment. Mrs. Giordano has failed to present any evidence from which the court could infer actual or constructive notice on the part of Petsmart as to the liquid on the floor, and thus, Mrs. Giordano cannot prove an essential element in her claim for negligence. In addition, the court **GRANTS** Mrs. Giordano's motion to seal with respect to the Petsmart Employee Handbook that is attached as an exhibit to her memorandum in opposition to summary judgment, but **DENIES**

11

her request to seal her memorandum in opposition. The Clerk is **DIRECTED** to enter judgment in favor of the defendant.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ *[signature]*
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 20, 2008